I'm Art Allen. I represent the appellant, Donnie Bryant. We've raised three issues on appeal. The government has not addressed issue number two, but has instead conceded that the count, count 36, in that issue should be reversed and dismissed under the double jeopardy act. That's the argument that I made in issue three. I was not going to address issue three further in view of the government's concession, other than to briefly note that I would disagree with their position that counts 22, 23, 24, and 26 should be merely vacated until some indefinite time in the future. I don't believe that's an appropriate remedy, just as with the remaining four counts. Those four counts should just be dismissed by this court. I'm asking that this court reverse the remaining counts for Mr. Bryant for two reasons, the first being the insufficiency of the evidence. The second, and it's incorporated into that argument... Before you go on, I guess because you're moving to another issue, are you then suggesting the government is correct that this really doesn't affect the 1959A3 convictions for conspiracy to commit murder? The double jeopardy argument does not affect those counts. All right. So you're agreeing then with the government that while it may affect some counts, it would not affect the one count or those counts of 1959A3 as to the conspiracy to commit the murder? That's correct, Your Honor.  However, those counts I'm submitting and have argued in the brief should be reversed by this court. The insufficiency... Well, first, the defective jury instruction I think I can deal with fairly quickly. This court in U.S. v. Banks, which is also a vicarious case out of the District of Nevada, was reversed for a defective jury instruction for reasons that are not totally clear. However, the district court in this case, over the objection of defense counsel, did a template of that same instruction and gave it to the jury in this case, which diminished the effect of the purpose provision. 1959A requires, as the government's theory in this case went, that Mr. Bryan committed the murder and the related shootings in order to enhance or promote his position within the criminal enterprise. Are you suggesting that the jury instruction given was not one the Ninth Circuit had agreed should be given? Yes, that is my position, Your Honor. This court in Banks said the purpose in committing a crime must substantially relate and must be substantial in a defendant's purpose in enhancing his position within a criminal enterprise. The district court initially said the word substantial is not even in the opinion. Counsel pointed that out to him, that in fact it was in there, and the court sort of said, well, even then, so what? Instead, he picked out a different word from the bank's opinion, which was integral. The violent crime must have been integral to the defendant's desire to promote himself within the enterprise, but that did nothing for the same reason that the instruction in Banks was deficient. It didn't properly guide and limit the jury's fact-finding ability. It could be a mere iota of the purpose. It didn't say, as this court said, it should be a substantial. For example, and the example used in Banks is a gang member who commits domestic battery should not be charged with Vicar, and the reasoning being that every time a gang member commits a crime, the government should not be permitted to turn that into a racketeering conviction. It's simply, and as one of the government's witnesses in this case said, not every gang member who commits a crime does it for the gang. So for that reason, the evidence as to purpose was simply not there. There was some generalities. Well, but there was evidence, was there not, that the shooting began because the apartment complex was the place where they made their money? That was the testimony. Isn't there testimony about that in the record? Yes, there is, Your Honor. Isn't there testimony that the gang demanded Carter to stop selling the drugs? There is testimony that one member of the gang, a juvenile named Chuck, whose case was severed, said that to him. Not my client, not the gang. And, in fact, we don't know other than the three people who were charged, and they each were severed and received separate trials, or the last one, the Chuck, the juvenile, entered a plea recently. But no one else is even named as a member of this gang. Well, my worry about this is this. What I have in front of me is the sufficiency of the evidence to support the verdict, and I went through to find out what evidence there would be. And I was trying to lay it out kind of slowly so that you could answer each one, and I don't want to take your time. But I found evidence that the shooting began because the apartment complex was the place where they make their money, that the gang, a member of the gang, demanded Carter to stop selling the drugs. Gang members were assigned specific roles in gangs. Gang members put in work by shooting up rival gangs' neighborhoods, selling drugs, or committing other acts of violence. The defendant was gunslinger or shooter, and reputation is built by these acts. After I put all that evidence together, I'm having a tough time understanding why there isn't sufficient evidence. Your Honor, each of those statements came from the – most of the statements that the court has just referenced came from the government's witness, Christopher Westbrook, who was not a member of this alleged gang. He was a member of, I believe, a crip gang. He was talking in generalities. He was a lay witness. He made those statements. This is what gang people do. He was not saying this is what Mr. Bryant did in this instance. The same is true – That's the kind of stuff that we have in the record which generally suggests what gangs do. I mean, it's kind of like – your argument is kind of like in Idaho. There's never a doctor in Idaho who wants to come in and say another doctor in Idaho is guilty of malpractice. We've got to have some other doctor come in and try to get himself familiarized. It happens in Idaho. And then they start talking. All you're suggesting to me is you can't have this gang member who is familiarized with gang member evidence who testifies about what gangs do. We're looking for sufficiency of the evidence. That's why I wanted you to speak to that. Well, and that's where tying to another case from this circuit, John, or the SHRYCK, S-H-R-Y-L-C-K case, gave a list of – and I conceded it's not all-inclusive – but a list of examples, extensive interstate drug dealings, members who are using interstate communication facilities, firearms that are manufactured. None of that here – going back to Mr. Westbrook, the gang member, and quite frankly with the deal the government gave him, I think he would have had no hesitancy in saying anything he could have if he had had it. He said, for example – and the government has been somewhat generous in its interpretation of the evidence. In their brief, they say Mr. Westbrook saw gang members buying drugs to sell. But when the court – if the court looks at the actual excerpt of record, what Mr. Westbrook said was, I saw some people, I don't even know their names, they were buying drugs, I thought they were members of Squad Up because they were always with Squad Up. So we have these vague, unspecified – I don't know. Then he – I'm reading his testimony. He says, do you know where they got those drugs? From some California dudes. It's a fair level of specificity. He knows they got them in California. He said, was – the question, was Squad Up territory? Yes. Was Squad Up involved in selling drugs? Some of them were. I don't know everybody. I mean, I understand your argument as to why a jury might not conduct, but it's a different level of review here. And I understand that, Your Honor. But, again, in no instance did the government present proof – and there are ways they could have done this. Both Banks, Shryock, Shryock and other cases from this circuit have pointed out specific ways. Other gang members, if there were, in fact, any other gang members, since we have no names for any of them, could have been called to testify about specific instances. The government, of course, had to even prove that there was an enterprise. In the absence of specific, we have Mr. Westbrook saying, yeah, I saw someone. I don't even know who they were. I don't know they were members. And this was in later cross-examination, not in the exact quote, Your Honor, that you read. This came in later, excerpt from Record 398 to 399, where he said, I don't even know who they were. I just sort of assumed they were members of this gang. And then there was a witness, Jabari Carter, who was one of the named victims, talking about the drug dealing. And he said Chuck, that's the severed juvenile, was, quote, kind of, I guess, selling dope or selling drugs. And the testimony of the police officer, Officer Bodner, was even less specific. He said, I think it was a gang, although at another point he said, I wouldn't even call it a gang at this point. They were selling dope. Your Honor, I concede there's an inference there, certainly. But when we get to the sufficiency of both issues, and the government was required to prove both, the interstate nexus and the defendant's purpose in allegedly committing these offenses, it simply is not there. That, of course, would end the defective instruction. Well, let me ask a hypothetical. I mean, I think it's easy to get too grounded here. But why isn't it proper, entirely proper, for the government to try a case like this by inference? Because you're rarely going to have somebody who says, well, here's the membership charter, and here's the signature. And he agreed that he was going to murder for the gang. And, you know, here's his card, and he's a member. I mean, you just don't get that kind of evidence. And you rarely get people who have some immunity who are going to testify against other gang members. So my question to you is, in the abstract, why isn't it just perfectly proper to show that this is a gang, that they dealt with drugs in interstate commerce, and that, using expert testimony, that the characteristics of gang are that people use these acts of violence to increase their standing in the gang? It's entirely appropriate for the government to do that. But that's a different question than whether they met their burden of proof of guilt beyond a reasonable doubt, which is my argument here. Just as in Banks' case, which is probably the best example of being on all fours on all issues here, it was reversed on the defective instruction, just as this Court should reverse and remand for that reason here. But it affirmed it on sufficiency grounds because they had testimony statements from Mr. Banks about his motives in doing things. They had members of that gang who testified against him. There was that level of proof that brought it up to the guilt beyond a reasonable doubt that's missing in this case. Your Honor, I have roughly a minute. Unless the Court has questions, I'd like to reserve that. Certainly, Counsel. Thank you for your argument. Ms. Olson. Good morning. May it please the Court. Good afternoon. May it please the Court, Elizabeth Olson. I know you're used to morning arguments. It's true. Good morning, Counsel. The defendant presents two issues with respect to sufficiency of the evidence. And I would just note to begin that what we're dealing with here is the most deferential standard of review. Not only is it the normal standard of review for questions of sufficiency in which you ask, drawing all inferences in favor of the jury's verdict, whether any rational juror could have found the elements of the offense beyond a reasonable  doubt that's missing in this case. But in this case, it has been. Counsel. Counsel. Yes. Let's turn to whether you think the instruction was defective. Do you concede that the instruction was defective? I agree that the instruction was imperfect. And I would just – and I would make a few comments. That's a little weaselly. Let's assume for the moment that it was defective. Then don't you have to show that the jury would have to find substantial involvement, that that was the substantial reason? Actually, Your Honor, and the question – I'll compare this with Banks because I think it directly answers your question. In Banks, the court found the jury instruction erroneous, and it vacated the Vicar counts, the Vicar convictions. What it didn't do – I mean, what it didn't do overtly, though I think we have to assume that it did impliedly, is that it found prejudice, because what this Court has said is that an imperfect jury instruction won't necessitate the reversal of convictions absent prejudice. And the facts of that case were such that, as this Court explained the facts of that case, that there was a contrary inference that the jury could have drawn with respect to that crime. Apparently, the victim's girlfriend had called the defendant some awful name, and so it was a personal beef between the victim and the defendant. And so what this Court said in Banks is, given that the instruction just said one purpose – it could have been an incidental purpose, it could have been a tiny little purpose – and that there was actually evidence of a contrary inference that the jury could have drawn, and it's actually possible that the jury drew that, I think that without saying so, what this Court did was find prejudice. And I will say that there's three things that are very different in this case. First of all, the jury instruction itself, the district court here made two significant improvements to the jury instruction. And as I say, I don't think that this jury instruction is perfect, but there are two specific improvements. And the first is on page 1105 of the excerpt of record where the instruction lists the elements of the offense of violent crime and native racketeering. And the fourth element – and there was significant discussion in the jury instruction conference about this fourth element. What it says here is that the fourth element is that Defendant Bryant's purpose in acting was for entrance or to maintain or enhance the position of the gang. Now, in the bank's decision, that fourth element said, one of the defendant's purposes. And here it says the defendant's purpose. And there was – that was one of the things in banks that this Court complained about, and there's significant discussion in the jury instruction conference taking that language – you know, taking that one of language out. This particular instruction, where it lists the four elements, was repeated to the jury because the defendant was charged with several violent crimes and native racketeering. So several times, the jury was instructed that it had to find that his purpose was to enhance or maintain his position in the gang. Now, on 1106 – and this is where there was significant discussion. I mean, starting on page 1052 and going all the way to 1063, and they sort of went back and forth between the two instructions. But there was significant discussion about this second paragraph of the instruction, where the district court added the language directly from this Court's decision in banks, added the language that the jury had defined that the defendant had committed the crime as an integral aspect of his membership in squatta. That is – actually, that phrase I think this Court uses six times in the bank's decision. I mean, that – the district court found that that was the holding of the bank's decision. And the defendant had argued below she wanted the word – or the defense counsel had suggested that the word substantial should be in there. And it's true that the word substantial does appear in the bank's decision, but the district court said, you know, I see – okay, so maybe the word substantial is there, but what I'm going to do is look at what I see to be as the holding. So he added that language. Now, the first paragraph and third paragraph still have language – that instruction still has some language that doesn't quite – that could be improved, I think, to comply more directly with the bank's decision. I will note that there was no objection to those two paragraphs. All of the discussion – the defendant – as far as I can tell from the docket, the defendant didn't propose jury instruction, so they were operating on the government's proposed and then the various iterations that the district court put together. And in that discussion, you know, page 1066 to 1068 of the excerpt of record, where they changed that language integral aspect, she says, Your Honor, I'd still prefer the word substantial. The judge says, okay, well, other than that, any other objections to instruction to page 32, seeing none, you know, I'm going to move on. So that – so if this is properly before the court, it's at least on the plain error standard, which would need to show prejudice, and in any event, erroneous jury instruction would need to show prejudice. And unlike the bank's case, in this case, there simply is not that competing inference that the jury should draw. Do you believe that this being a plain error standard makes it a different case than in the bank's decision? That is one difference, and I do think that's one difference. Banks didn't talk about – I mean, they said that they reviewed jury instructions de novo, but there was no discussion at all about, and if we find there's a problem with the jury instruction, on what basis do we reverse the convictions? Now, I think that because this Court had said in other cases, Frege, I think is the name of the case, where this Court said we're not going to reverse a conviction due to an imperfect jury instruction on, you know, absent a finding of prejudice. I think in Banks, the Court found that prejudice because of the facts of that case. There was this, you know, significant contrary inference that the jury could have drawn about – Well, I suppose, but one of the points of Banks is that the statute, that one could not be convicted under the statute of status. In other words, that mere membership alone doesn't show purpose. Yes. And so then we have a different grant to look – piecing through Banks, you can pull out a lot of different words. There's substantial purpose, dominant purpose, but some purpose doesn't seem to be in there. Well, integral aspect, though, I mean, I think the Court – and actually, if you look in the jury instruction charging – or the conference that they had, you know, there's a three-page quote where the district court judge is just reading from the Banks decision. And what – and that's exactly what he takes out of it. I mean, he says there's a difference between committing a violent crime when you're a gang member and committing a violent crime for your gang. I mean, that's the status crime, and that's what he took away from the Banks, that the commission of this crime has to be an integral aspect of your membership in the gang, not just, oh, incidentally, you happen to be a member of a gang. It really needs to be part of that. And all – and I mean, there was just a plethora of testimony, both general about gangs and specific about Squad Up, about – to establish or from which the jury could draw that reasonable inference that what happened here was a turf battle. This was Squad Up. They claimed the carry arms as their turf. There was testimony, you know, what happens when somebody from outside the gang comes into a gang's turf and starts selling drugs. And Chris – or I think it was Chris Westbrook said, well, first we tell them to leave, and if they don't leave, we kill them. And that's exactly what happened here. I mean, Carter and Henry were outsiders. They were dealing drugs on Squad Up turf. We've got eyewitnesses to the confrontation where Chuck and Caboose and the defendant here, Donnie, confronted Carter and said, this is Squad Up territory. You don't belong here. Get out of here. He doesn't leave. And the next day or a couple of days later, we've got eyewitnesses who hear Chuck, who is with Caboose and the defendant here, Bryant, and other Squad Up members. I will just note for the record that there's actually quite a bit of discussion of other Squad Up members. The founders of Squad Up are identified in the record as including Little Marcus, Bucks, Y2, Pee Wee, and Keystone. I think there's actually quite a bit – Keystone and Pee Wee come up a few other times and Bucks in the testimony. So, you know, this is a gang. After they threaten Carter and tell him to leave, a couple of days later, eyewitnesses hear the threats, hear Chuck say that they're going to kill New Orleans. That's what they call Carter. Caboose saying he's going to die tonight. Bryant is with them, you know, as this is all taking place. And then the afternoon of the shooting, we've got eyewitnesses who saw these Squad Up members and other Squad Up members passing around guns, putting them in their waistbands. And then we've got eyewitnesses who saw Bryant committing the crime. So that the – and then in addition for motive and purpose, we've got both general, about gangs generally, and specific testimony about the importance of reputation, of defending your turf, and of being willing to go out as a gang member, being willing to go out and commit those violent crimes as a way of moving up in the gang and as a way of promoting your gang to the rest of the city. Mr. Westbrook and Mr. Davis both testified that Squad Up had tried to recruit them and had tried to recruit them specifically because of their reputations as gunslingers and fighters. There was significant testimony that Mr. Bryant had that reputation as a gunslinger, that he was known as someone who was willing to do the shootings. Wasn't that the testimony from a prior – his affiliation with a prior gang, though? Yes, that was when he was with the Rolling 60s that he had. But yes, Mr. Davis testified that when he first heard about Bryant, about the defendant, what he heard is, you've got to meet this guy because he's a gunslinger. And then – so he's the one who started – he actually didn't start Squad Up, but he was recruited into Squad Up in September of 2004, which was actually fairly shortly before this. This occurred in September of 2004. He was hanging with these boys. And, you know, within a week, we've got the threat, the confrontation – actually, the other way around, the confrontation, the accusation, the witnesses who see these defendants with guns, and then the shootout. Okay. I don't know if you had any questions about the concession that the government made with respect to multiplicity. Just one, and this to the scope. Your opponent suggested that we ought to dismiss it directly or direct the district court to do so. Do you have a – I took that right from Davenport. You know, what they said in Davenport is you vacate them, it's subject to reinstatement if something happens to the other convictions. And then the other point is about that because the – the other point that I made in the answering brief, which I think the defense has now agreed with, is that the conspiracy to commit Carter, being a different act from the shooting at Carter, doesn't have that multiplicity problem. And then that the 924Cs have to be taken out anyway. And then just finally, because I have a minute, on the interstate – on the effect on interstate commerce. I mean, we had direct testimony from a witness who saw squad up dealing drugs that they bought from dealers in California. You know, we could have had more than one witness, but the issue here is whether – given that it's one witness comes down to credibility, and that was a question for the jury to make. Okay. Any further questions? And we appreciate the government's concession. We know that you took a look at the issue and cited it, so thank you. Thank you. If I may very briefly respond to a couple of things. In regards to one question, I just wanted to be clear. I believe it is a de novo review on the erroneous instruction. There was an objection at the district court level by Mr. Bynes' trial counsel, and the appropriate standard is de novo, not plain error on that issue. And as to that particular issue, the Bynes case is quite clear. The purpose does not have to be the only purpose or the main purpose, but, quote, it does have to be a substantial purpose. And for whatever reason, the district court here insisted on not using substantial but using integral. Which has the clearer meaning? Which could a jury more likely follow and understand? Integral? Substantial? I think there's no question the government concedes it's not a perfect instruction. I'm hoping that the remand from this court will allow the next use of this instruction to be perfect. Your Honor, as to issues, again, we come back to what other people who weren't privy to what went on in this group, and the names that were given were not members of Squad Up. They were members of a group that I believe was called Little Ballers. There was a lot of testimony about T-shirts and names, of which Mr. Bynes' name did not appear. So there were no other named members to my recollection of the record named here. Your Honor, as also last point, Mr. Westbrook, who's sort of the chief government witness here about what gangs do, who was not a member of this gang, was not privy to anything that went on, a saying gang for purposes of argument, what he in fact also testified to is that the shooting of Gilbert Henry and the other people was over a crap game. He says that my client told him while they were both incarcerated that Gilbert Henry was running a crap game. He was making all the money. Someone didn't like it. I believe it was Chucky, to which Mr. Henry said, Why don't you shoot me then? And he got shot, which sometimes happens when you ask with that type of invitation to someone such as Little Chucky. Your Honor, I again submit the evidence is insufficient, which would require reversal and dismissal. But as to the evidence being insufficient, you would agree that you didn't move for a judgment for acquittal, or you or counsel did not move for a judgment of acquittal at the close of all the evidence. Is that correct? Unfortunately, that is correct, Your Honor, and I've conceded that in my brief. Thank you. Thank you both for the argument. And the case just heard will be submitted for decision.
judges: Fletcher B. , Thomas, Smith M.